UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS


ELIZABETH R. LEWIS,                )
                                   )
   Plaintiff,                     )
                                   )
                                   )    Civil Action
vs.                                )    No. 13-11896-RWZ
                                   )
WELLS FARGO BANK, N.A., et         )
al.                                )
                                   )
   Defendants.                    )



**MOTION HEARING**



BEFORE THE HONORABLE RYA W. ZOBEL
UNITED STATES DISTRICT COURT JUDGE


UNITED STATES DISTRICT COURT
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
November 26, 2013
2:00 p.m.


*   *   *   *


CATHERINE A. HANDEL, RPR-CM, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
1 Courthouse Way
Boston, Massachusetts 02210
(617) 261-0555

APPEARANCES:


For the Plaintiff:

LAW OFFICE OF GLENN F. RUSSELL, JR.
By:  Glenn F. Russell, Jr., Esq.
     38 Rock Street
     Suite 12
     Fall River, MA 02720


For the Defendants:

SEYFARTH SHAW LLP
By:  David M. Bizar, Esq.
     World Trade Center East
     Two Seaport Lane, Suite 300
     Boston, MA 02210-2028

PROCEEDINGS

(The following proceedings were held in open court before the Honorable Rya W. Zobel, United States District Judge, United States District Court, District of Massachusetts, at the John J. Moakley United States Courthouse, 1 Courthouse Way, Boston, Massachusetts, on November 26, 2013.)

THE COURT: Good afternoon. Please be seated.

MR. BIZAR: Good afternoon, your Honor.

COURTROOM DEPUTY CLERK URSO: This is Elizabeth Lewis versus Wells Fargo, Civil 13-11896. If counsel could please identify themselves for the record, please.

MR. RUSSELL: Good afternoon, your Honor. Glenn Russell, Jr., on behalf of Elizabeth R. Lewis, the plaintiff.

THE COURT: I'm sorry, you're Mr. Russell?

MR. RUSSELL: Yes, your Honor.

MR. BIZAR: Good afternoon, your Honor. David Bizar for the defendant, Wells Fargo.

THE COURT: There are two motions, one of which is, I gather, not ripe, which is the motion to dismiss, right?

MR. BIZAR: The motion to dismiss is not calendared for today, your Honor.

THE COURT: I understand that, but it seems to me they go in tandem. If you're entitled to a motion to dismiss, then, presumably, there is no injunction.

MR. BIZAR: Well, we consider the motion to dismiss,

1      your Honor, to be ripe in the sense that it's pending before

2      the Court, but it wasn't calendared for argument today.  That

3      was my only observation.

4             THE COURT:  Okay.  We'll just hear the injunction

5      one.

6             MR. BIZAR:  That's fine.

7             THE COURT:  Right?

8             MR. RUSSELL:  That was my impression, your Honor.

9             THE COURT:  I'll hear you.

10            MR. RUSSELL:  Thank you, your Honor.

11            This was a matter that was originally filed in the

12    Norfolk Superior Court and as traditionally --

13            THE COURT:  Let me ask you, what is the basis of your

14    statement that there's a likelihood of success on the merits?

15    I understand the irreparable harm.

16            MR. RUSSELL:  Correct.

17            THE COURT:  So, if you would give me a little bit of

18    the history of this, I would appreciate it, and then what --

19    how do you get to likelihood of success on the merits?

20            MR. RUSSELL:  Will your Honor indulge me in backing

21    up?  I had a couple of statements before we got to that piece.

22            THE COURT:  I'm sorry?

23            MR. RUSSELL:  Would your Honor indulge me in a little

24    groundwork prior to that piece?

25            THE COURT:  Sure.

1  　　　　MR. RUSSELL:  When this matter was originally filed,

2  there was an active pending foreclosure auction that was

3  published.  It was an August 1st foreclosure auction.

4  　　　　THE COURT:  Could you keep your voice up, please?

5  　　　　MR. RUSSELL:  Sure, I'll try.

6  　　　　THE COURT:  There is a microphone there if you need

7  it.  You can just pull it wherever you want and raise it up.

8  　　　　COURTROOM DEPUTY CLERK URSO:  I shut it off.

9  　　　　MR. RUSSELL:  It's a rarity that a lawyer is

10  soft-spoken.

11  　　　　THE COURT:  It doesn't work?

12  　　　　COURTROOM DEPUTY CLERK URSO:  No.  I pulled it out

13  and I shut it off because usually we don't use them and they

14  make that buzzing noise.

15  　　　　MR. RUSSELL:  I'll speak louder.

16  　　　　So, at the time that the injunction was requested,

17  there was an active filed foreclosure auction.  Foreclosure is

18  initiated in the Commonwealth under statute when there's a

19  publication of the auction sale.

20  　　　　There was a defect in the publication in which the

21  publication was published in a paper that does not have

22  sufficient or any circulation in the locality of where the

23  plaintiff's property is.  So, therefore, there is no current

24  auction that is scheduled, your Honor.

25  　　　　THE COURT:  Well, in that case, what are we doing?

1          MR. RUSSELL:  Correct.

2          At the time that I renewed the auction -- or the

3   motion for preliminary injunction, I had no affirmative

4   statements in writing that, in fact, the defendant's position

5   is that it was not published correctly.

6          In the opposition to the preliminary injunction, it

7   would seem to appear that they concede that issue, and they

8   say that it can be rectified by republication.  Therefore,

9   there is no auction under statute currently pending, your

10  Honor.

11         THE COURT:  There is also, as I understand it, an

12  agreement that so long as this proceeding is around, they're

13  not going to go, right?  They're not going to seek

14  foreclosure.

15         MR. BIZAR:  The agreement, your Honor, was that as

16  long as the proceeding remains pending, we would not seek to

17  foreclose, but as part of that agreement, there was a promise

18  made by the plaintiff that they would fund an escrow.  I think

19  about $10,000 should be funded in the escrow right now, and

20  that they would inform the Court if for any reason the escrow

21  payments were not made.  They have not so informed the Court,

22  but I haven't actually heard from opposing counsel that those

23  escrow payments have, in fact, been made.

24         And we oppose the relief he's requesting right now.

25  We do believe that the issues are ripe and not moot, and I

1   would like to be heard on that before the Court were to decide

2   to punt this to a later date.

3         THE COURT:  Well, if there is an agreement not to

4   foreclose during the pendency of this action, I don't know why

5   I need to enter an injunction.

6         MR. BIZAR:  Not the action, your Honor.  The

7   agreement was we would not foreclose pending the outcome of

8   this application for a preliminary injunction, not the case,

9   just this preliminary injunction.

10        THE COURT:  Okay.  So long as I don't decide it,

11   you're not foreclosing.  I mean, one way or the other.  Either

12   I say yes, they're entitled to the injunction or I say I'm

13   going to sit on it.

14        MR. BIZAR:  Well, your Honor, with all -- with great

15   respect, it would be inappropriate for the Court to

16   purposefully sit on a pending motion that the Court has an

17   obligation to decide under any circumstances.  We have a right

18   to have the motion heard and decided by the Court in its

19   appropriate due course.  So, I'm not sure the -- what the

20   Court's position is about that.

21        MR. RUSSELL:  May I respond to that?

22        THE COURT:  Yes.

23        MR. RUSSELL:  That's a condition precedent that

24   there's an auction.  The plaintiff would say what would be the

25   ultimate result of this Court's ruling, would be to go ahead

1   with the foreclosure, but there is none.  There is no

2   currently scheduled foreclosure auction and, therefore, the

3   plaintiff's position --

4           THE COURT:  There's nothing for me to do.  Nothing

5   for me to decide.

6           MR. RUSSELL:  That is correct.

7           MR. BIZAR:  That's not correct, your Honor.

8           THE COURT:  I'm sorry?

9           MR. BIZAR:  That's not correct.

10          So, the way this works is we have a statutory

11  obligation to give notice of a particular date for a

12  foreclosure sale, which we did.  When we gave that statutory

13  notice, borrower's counsel filed an action to enjoin the

14  foreclosure.

15          There's only a small window of time between when the

16  notice is given and when the sale occurs.  The sale could not

17  occur because of the motion and the agreement that was entered

18  into to have the motion adjudicated by this Court.

19          So, as a result, the motion -- excuse me.  As a

20  result, the foreclosure sale did not occur.  In order for a

21  foreclosure sale to occur, we have to re-notice it.

22          If the Court decides that there's nothing to worry

23  about enjoining, if we just go back to the way things were

24  before we started, then we'll be -- where we'll be is that

25  Wells Fargo will re-notice the foreclosure, because we have a

1  legal right to.  This is a non-judicial foreclosure state.  In
2  the absence of an injunction, we can do that.

3        So, if we were to re-notice the foreclosure, as we
4  had done before, the same exact thing is going to happen.  My
5  brother is going to file another injunction which is going to
6  cancel that scheduled foreclosure sale because we're going to
7  be back before this Court arguing, once again, over whether or
8  not this foreclosure can go forward.

9        There were a number of issues that counsel raised in
10  his motion for preliminary injunction besides just the one
11  that is mooted.  The mooted one is did the notice actually
12  take place in the right town.  That's moot because we have to
13  re-notice.  When we re-notice, we'll issue it in a different
14  town.  When we issue it in a different town, he can then come
15  back and he can challenge as to whether or not he thinks that
16  was issued in the correct town or not.

17        But he's also going to bring again, presumably, all
18  the same challenges he has pending before the Court now.  Why
19  I say "presumably" is he hasn't withdrawn.  If he says
20  withdrawn with prejudice, I'm never going to bring them again,
21  which he's not going to do, they're not moot.  They're not
22  moot because he's not going to withdraw.

23        So, we'll have to pay, because we paid for this, to
24  schedule another foreclosure sale.  We're going to end up
25  having the next foreclosure sale cancelled after having

1  expended those expenses, which is not in Wells Fargo's best

2  interests, nor his clients because Wells Fargo would seek to

3  hold his client liable for those expenses pursuant to the

4  terms of the loan agreement.

5         What the Court should do and what it's appropriate to

6  do is to adjudicate the issues that are live and remain

7  pending before the Court.  Counsel admits they're pending

8  before the Court.  He just says they're really moot because

9  we're going to have to re-notice.  They're pending before this

10 Court.  He won't withdraw them.  And when the Court decides

11 those, if the Court decides, yes, Wells Fargo can foreclosure,

12 we issue another notice.  If the time --

13        THE COURT:  I'm not going to say Wells Fargo may -- I

14 mean, the question before me is to prevent them.  I'm not

15 going to say it may do it.

16        MR. BIZAR:  Well, yes, your Honor, you're correct.

17 If the Court denies the motion for preliminary injunction,

18 then Wells Fargo will re-notice the foreclosure and we'll go

19 back to our non-judicial foreclosure activity.

20        If the Court wants to find today that, no, you know,

21 what?  I prefer that you all just go back to where you were,

22 then what we would ask is that, fine, we'll go ahead and

23 re-notice the foreclosure now and we'll come back again when

24 he files his new application, but the Court's order and our

25 agreement had a requirement that they continue to protect

1    Wells Fargo in the amount of $2500 a month in a surety amount

2    and I would make the motion --

3              THE COURT:  That's for taxes and insurance?

4              MR. BIZAR:  Well, yes, your Honor.

5         Wells Fargo has already come out of pocket in this

6    matter at least $18,870.59 for taxes and insurance for the

7    premises.  The borrower has been living in the premises for

8    over two years completely cost free.  So, we're going to --

9              THE COURT:  No payments of any kind are being made?

10             MR. BIZAR:  The only payments of any kind that have

11   been made since more than two years ago should be the $10,000

12   over the last few months paid into my brother's escrow fund

13   pursuant to the agreement that was reached, which he has not

14   confirmed that the payments were made.  I would like him to do

15   that, but that's all -- that's it.  Nothing else.

16             THE COURT:  Let me hear from your brother.

17             MR. RUSSELL:  Thank you, your Honor.

18        As a condition precedent, the $2500 a monthly was

19   issued by the judge in Norfolk Superior Court, Judge Brassard,

20   based on the condition precedent that there was a legally

21   valid auction notice published.  Under statute -- under §244,

22   Section 14, it has to be published in the correct local paper,

23   and Judge Long in the original *Ibanez* case, which I was a part

24   of, issued a very detailed statement as to what locality

25   means.  In that case it was published in the Boston Globe,

1  which Judge Long found was appropriate.  Here we have -- I

2  would take it as an admission.  My brother may take it

3  otherwise.  But reading the papers would indicate that, in

4  fact, it was void ab initio.

5       THE COURT:  Well, what difference does it make?  They

6  can issue a new one.

7       MR. RUSSELL:  Correct, but the injunction -- my

8  brother just said that the auction was stopped because of that

9  injunction.  That is an incorrect statement of law, because if

10 they went ahead and -- went ahead with that foreclosure, it

11 was a wrongful foreclosure and --

12      THE COURT:  Well, perhaps, but it didn't go forward.

13      MR. RUSSELL:  Correct.

14      THE COURT:  So, what do you want me to do?

15      MR. RUSSELL:  I would say that this current

16 particular proceeding is moot because there is no auction.

17 Under statute, the foreclosure process does not start until

18 the publication occurs.

19      THE COURT:  Do you say that they're entitled to start

20 a new auction proceeding now, a new foreclosure proceeding?

21      MR. RUSSELL:  I cannot stop them from doing that.  If

22 they do so, then -- and then the foreclosure process would

23 begin anew for the first time because initially it never

24 occurred under statute.

25      THE COURT:  What difference does that make?

1        MR. RUSSELL:  The difference is that the moneys that

2   my brother said are due are not due because there was never

3   any auction.  There was never any valid auction under statute,

4   and that it's very clear under §244, 14 --

5        THE COURT:  I don't understand that.  I thought the

6   parties agreed that there wouldn't be an action under the

7   circumstances that existed at the time.

8        MR. RUSSELL:  Because that was -- it was thought to

9   be -- it was our argument that it was not a valid auction, but

10  the Court viewed it as it was a valid auction.  Subsequent to

11  that hearing, it's been determined that it was not a valid

12  auction.  Therefore, all of those statements regarding a valid

13  auction are moot.

14       THE COURT:  So, they can just -- hold it.

15       So, they can just go forward now and order a new --

16  call for a new auction and notice a new auction in the Globe.

17       MR. RUSSELL:  Correct.

18       THE COURT:  And then what?

19       MR. RUSSELL:  But at that point it becomes a live

20  controversy.  There's no foreclosure auction.  What my brother

21  is asking is for this Court to make an advisory opinion --

22       THE COURT:  Let me cut to the chase.  What are you

23  really looking for?  I gather we have a homeowner --

24       MR. RUSSELL:  Yes.

25       THE COURT:  -- that has been living in the home for

1   two years now without any making payments either for the

2   mortgage principle and interest or for the taxes or for the

3   insurance.

4           MR. RUSSELL:  But as a condition precedent we have to

5   know who she would have to pay.  That is our secondary

6   argument.  There is not -- there is not a local bank where she

7   took out a loan, your Honor, respectfully stated.  I know my

8   brother's position is that it's Wells Fargo.  It was

9   originally World Savings and Wachovia, but --

10          THE COURT:  Well, has she paid it into escrow pending

11  determination of who is the proper payee?

12          MR. RUSSELL:  I have -- I can tell you -- I can state

13  for the Court, under the agreement I received two payments and

14  I received the second two payments today, which I have a check

15  in my pocket.  So --

16          THE COURT:  I know, but we're talking about two years

17  worth of principle, interest, taxes and insurance, I gather.

18          MR. RUSSELL:  Correct, to the party that owns the

19  rights to those things.

20          THE COURT:  I know, but if you dispute that, you

21  normally would pay the amount that you owe into escrow pending

22  the determination of who the proper payee is.  That wasn't

23  done here, was it?

24          MR. RUSSELL:  That was not.

25          THE COURT:  So, it's not clear to me exactly where we

1   are.

2          I gather your position is that there is nothing

3   before me, although there is a motion for an injunction filed

4   by you, and there is now a motion to dismiss which will be

5   ripe by the end of the month.

6          MR. RUSSELL:  That's correct, your Honor.

7          THE COURT:  That's right?

8          MR. RUSSELL:  That is correct.

9          And in the plaintiff's defense, the only reason -- I

10  renewed the motion when it was removed to this Court to the

11  preserve her rights.  Subsequent to that I did only fairly

12  recently receive the affirmation in the defendant's pleadings

13  that, in fact -- regarding the auction itself.  So, therefore,

14  I would have withdrawn the motion earlier, but it was due to

15  that fact, although there was no assertion to me that, in

16  fact -- that that was their position.

17         THE COURT:  Anything else on the merits of the motion

18  for an injunction?

19         MR. RUSSELL:  I just -- in the papers I -- the

20  plaintiff's position is that it will be pretty much

21  duplicative of what I'm going to be filing by the end of the

22  week with regards to the motion to dismiss.  There are

23  overlapping issues.  So, that would be the plaintiff's

24  position.

25         THE COURT:  Okay.

1    MR. RUSSELL:  Thank you, your Honor.

2    THE COURT:  Thank you.

3    Mr. Bizar -- is it *Bizar*?

4    MR. BIZAR:  *Bizar*, your Honor.  Thank you.

5    Your Honor, the parties filed a joint...

6    THE COURT:  What else do I need to know about the

7    motion for the injunction?

8    MR. BIZAR:  Well, your Honor, the parties filed a

9    joint motion to amend the briefing schedule in this case.

10   It's Docket Entry No. 15, which sets forth the parties'

11   agreement on the escrow.  So, to the extent the Court has

12   questions about what that agreement was, it's set forth in a

13   joint filing at Docket Entry 15, and what we agreed to is that

14   the plaintiff would continue to pay the $2500 monthly surety

15   payments while the TRO remains in effect.

16   So, my point to the Court was as long as we're

17   restrained from initiating foreclosure proceedings, they're

18   supposed to be paying the $2500.  So, the only thing I would

19   ask is that I leave today with a clear understanding of are we

20   or are we not enjoined either by a temporary restraining order

21   or by a preliminary injunction from re-initiating the

22   foreclosure process or is the Court either deciding the

23   application for preliminary injunction or not.  I just am

24   unsure from the Court's questioning of the parties what the

25   Court proposes to do.

1       THE COURT:  I'm trying to understand what the parties

2  want and what the parties' position is and I'm having some

3  difficulty with that.

4       MR. BIZAR:  Your Honor, if may assist the Court with

5  that.  I understand my brother may want the Court to --

6       THE COURT:  To do nothing.

7       MR. BIZAR:  -- to do nothing and --

8       THE COURT:  But he understands that when the motion

9  to dismiss is ripe, then I have to do something.

10       MR. BIZAR:  Correct, your Honor.

11       And what we're asking the Court to do is to

12  adjudicate either -- either he should withdraw the motion for

13  preliminary injunction which he says is moot, then he should

14  withdraw it and it's over and then we'll go forward from

15  there, or the Court should adjudicate the pending motion

16  before the Court.  Motions for preliminary injunction are

17  ordinarily entitled to a quick review by a court for obvious

18  reasons.  We are right now under an agreement restrained from

19  going forward.

20       THE COURT:  Are you withdrawing your motion?

21       MR. RUSSELL:  The response to that is, your Honor,

22  he's not restrained.  That was with regards -- the restraining

23  order was with specific regards to the August 1st, 2013

24  auction.

25       THE COURT:  Okay.  Well, I'm not going to be able to

1  sort that out because I wasn't there and I don't have a record

2  of it.

3         MR. RUSSELL:  I understand and I apologize for that,

4  your Honor.

5         THE COURT:  But, in any event, the position now is

6  that there is a motion for a restraining order that you say is

7  moot, in a sense.  Motion to enjoin a foreclosure that you say

8  is moot, but you're not going to withdraw it?

9         MR. RUSSELL:  Because there is -- there is nothing to

10  restrain, your Honor.  Currently there's no auction sale to

11  restrain.  There's nothing --

12        THE COURT:  But I can restrain their attempt to have

13  an auction.

14        MR. BIZAR:  Exactly.

15        MR. RUSSELL:  That's his separate issue, your Honor.

16        THE COURT:  No, it isn't.  It's part of the same

17  thing.

18        MR. RUSSELL:  But the plaintiff's argument was to --

19  initially it was filed to stop that auction.  He has yet to

20  file the new notice.  So, there is no auction -- there's

21  nothing to restrain.

22        THE COURT:  Okay.

23        MR. RUSSELL:  There's nothing to prevent him from

24  doing that.

25        THE COURT:  Okay.  Anything else, Mr. Bizar?

1    MR. BIZAR:  Your Honor, my brother concedes, as I

2 hear him saying, that there is no order, rule, nothing,

3 prohibiting Wells Fargo from proceeding or to re-notice the

4 foreclosure.  We'll re-notice the foreclosure and the Court

5 need not decide the papers today, but I would ask that the

6 escrow payments continue during this process, which I hear my

7 brother saying he doesn't want to do it.

8    MR. RUSSELL:  There would have to be --

9    THE COURT:  Well, that's not a matter before me.

10 He says this motion is moot or it's not ripe.  He

11 says it's moot, but he won't withdraw it.  And you want to

12 have payment under an agreement that you have made with him,

13 about which I really don't have any particular knowledge.

14 I suggest you talk to each other and make sure that

15 it works out.  In the meantime, I will not -- you know, I will

16 take the papers and -- I gather you're planning to file an

17 opposition to the motion to dismiss by the end of the month,

18 which is the time it's due.

19    MR. RUSSELL:  That is correct, your Honor.

20    MR. BIZAR:  Your Honor --

21    THE COURT:  Then I will decide that, too.

22    MR. BIZAR:  Let me just ask the question outright.

23 May Wells Fargo re-notice the foreclosure without

24 running afoul of the Court?

25    THE COURT:  I'm not giving advice.  I mean, that's

1    not my function.

2              MR. BIZAR:  Your Honor -- okay.

3              Here's the problem I have.  There is a pending --

4    there is an agreement memorialized in Exhibit -- I'm sorry --

5    in Document Entry No. 15 that says -- we're bound by this

6    agreement.

7              (Discussion off the record at the bench.)

8              COURTROOM DEPUTY CLERK URSO:  Sorry.

9              THE COURT:  Sorry.

10             MR. BIZAR:  No problem.

11             "The parties" -- this is at Paragraph 8.  This is an

12   agreement --

13             THE COURT:  Paragraph of what?

14             MR. BIZAR:  The Document Entry No. 15, which is a

15   joint --

16             THE COURT:  This is the motion for an extension of

17   time?

18             MR. BIZAR:  The joint motion to amend the briefing

19   schedule on plaintiff's motion for preliminary injunction.

20             THE COURT:  Okay.

21             MR. BIZAR:  And at Paragraph 8, quote, "The parties

22   have agreed that the temporary restraining order will remain

23   in effect until this Court decides the plaintiff's motion for

24   preliminary injunction," unquote.

25             I am bound by that agreement.  My client is bound by

1    that agreement. We cannot re-initiate the foreclosure until

2    the Court decides that the motion for preliminary injunction

3    is good, no good, moot, not moot. I need a decision from the

4    Court in order to be able to not violate the agreement that

5    was put before this Court. That's my problem.

6          THE COURT: Okay. I'll look at that, too.

7          MR. BIZAR: Well, your Honor, you're leaving me in

8    limbo then. I can't do anything.

9          THE COURT: I'm leaving you in limbo as I leave every

10   bunch of litigants in limbo until I decide the matter, but I

11   have to look at the papers to decide it and I haven't seen

12   this paper yet.

13        MR. BIZAR: I guess, your Honor, the reason why I'm

14   saying I'm in limbo is I don't know whether the Court intends

15   to decide the matter or not because the Court appears inclined

16   not to decide the matter.

17        I've never had this happen in a 20-year law practice.

18   That's why you're getting some feedback from me, because I

19   don't know, based on what the Court is telling me, what the

20   Court intends to do.

21        THE COURT: Well, because I haven't decided it. I'm

22   taking the papers so I can look at them and study them and

23   then, hopefully, make a correct decision.

24        MR. BIZAR: Then, your Honor, may we be heard on the

25   merits of the motion, which we have not been heard on yet?

```
1                THE COURT:  I'm sorry?

2                MR. BIZAR:  We may then be heard on the merits of the

3     motion, your Honor, which --

4                THE COURT:  Which motion?

5                MR. BIZAR:  The motion for preliminary injunction.

6                THE COURT:  That's what we were here for today.

7                MR. BIZAR:  Yes, your Honor.  Then I would like to be

8     heard on the merits of the motion.

9                THE COURT:  I just invited you a moment ago to argue

10    to the motion.

11               MR. BIZAR:  I'm prepared --

12               THE COURT:  You have five minutes because I have

13    another case.

14               MR. BIZAR:  Thank you.

15               Your Honor, the motion for preliminary injunction

16    should be denied for the reasons set forth in our papers.

17    Wells Fargo has demonstrated standing.  The preliminary --

18    what the Court started off talking about, what the Court looks

19    to first is likelihood of success on the merits on one of

20    these motions, and the plaintiff has a heavy burden and he

21    hasn't carried his burden.

22               Wells Fargo clearly has standing.  Wells Fargo has

23    been the owner and holder of both the note and the mortgage

24    from their inception.  The note and the mortgage, per

25    affidavit of Michael Dolan submitted with our papers, has
```

1    never been transferred to anyone.  Never been transferred to

2    anyone.  It has always been with the same bank.  The

3    originating bank was World Savings Bank, F.S.B.  World Savings

4    Bank, F.S.B. merged into Wachovia Mortgage, F.S.B.  Wachovia

5    Mortgage, F.S.B. merged into Wells Fargo Bank Southwest, N.A.,

6    which changed its name and merged into Wells Fargo Bank, N.A.,

7    and we've briefed that in an affidavit showing the progression

8    of one bank to the next, changing its name, all the mergers,

9    and there is absolutely no proof that's been submitted by my

10    brother to show that those affidavits are not correct.

11          Many courts have recognized the progression as we

12    have briefed.  There's never been a transfer.  There's never

13    been an assignment.  The mortgage has always been held by the

14    same bank.

15          We have an affidavit that says that the note is

16    currently held by that same bank and always has been.  My

17    brother disputes that.  He's got no proof.  He has to have

18    proof.  It's his burden.  All he has is argument.  There is no

19    proof whatsoever before the Court, not even an affidavit,

20    nothing.

21          So, your Honor, we have established our standing.

22    Under *Ibanez*, all we have to show is that we are the owner and

23    holder of the note and mortgage, which we have.  Under *Eaton*,

24    all we have to show is that we were the holder of the note and

25    mortgage on the date that the foreclosure was commenced, which

1   we've shown.  So, there's nothing left to show.  It's all

2   before the Court right now in the papers.

3           All of the other arguments that my brother raises are

4   well addressed in our papers.  I'd be pleased to answer any

5   questions that the Court may have.  Thank you for your time.

6           THE COURT:  Thank you very much.  And I will take the

7   papers.

8           MR. BIZAR:  Thank you.

9           THE COURT:  Thank you.

10          And you, too.

11          MR. RUSSELL:  Thank you, your Honor.

12          (Adjourned, 2:33 p.m.)

13

14                    C E R T I F I C A T E

15          I, Catherine A. Handel, Official Court Reporter of

16  the United States District Court, do hereby certify that the

17  foregoing transcript, from Page 1 to Page 24, constitutes to the

18  best of my skill and ability a true and accurate transcription

19  of my stenotype notes taken in the matter of Civil Action No.

20  13-11896-RWZ, Elizabeth R. Lewis versus Wells Fargo Bank, N.A.,

21  et al.

22

23

24  December 19, 2013          /s/Catherine A. Handel
    Date                       Catherine A. Handel, RPR-CM, CRR

25